**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CRYSTAL SHAMSUD-DIN,**

       **Plaintiff,**                    **CIVIL ACTION NO. 16-cv-11818**

       **v.**                               **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Crystal Shamsud-Din seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 18).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 4.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**.

## II.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 22, 2013, alleging that she has been disabled since March 1, 2010, due to "[b]ack/neck pain, wrist/finger paralysis, headaches, feet," arthritis, "carpal tunnel wrist, fingers, joint pain," irritable bowel syndrome (IBS), "divertiulis with absece" [sic], depression, diabetes, gland swelling in her throat, leg cramps, and lock shoulder.  (TR 75, 141-47, 161.)  The Social Security Administration denied Plaintiff's claims on February 6, 2014, and Plaintiff requested a *de novo* hearing.  (TR 65-75, 81-82.)  Prior to the administrative hearing, Plaintiff amended her alleged onset date to April 30, 2012.  (TR 157.)  On May 6, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Henry Perez, Jr.  (TR 37-64.)  In a June 4, 2015 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b) and was not entitled to benefits because she was capable of performing her past relevant work as a hairstylist.  (TR 19-32.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.  HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a brief statement of facts, which primarily consists of a summary of her subjective complaints.  (Docket no. 16 at 8-10.)  The ALJ summarized Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision.  (TR 21-23, 25-30, 31.)  Defendant adopts the ALJ's discussion of the medical evidence.  (Docket no. 18 at 4.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds

that there are no material inconsistencies between the ALJ's summary of the facts and the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the ALJ's factual recitation by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of April 30, 2012, and that Plaintiff suffered from the following severe impairments: inflammatory bowel syndrome and diabetes mellitus. (TR 21.) The ALJ also found that Plaintiff's carpal tunnel syndrome, obesity, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, hypertension, depression, right shoulder mild degenerative changes, and sialadenitis were non-severe impairments. (TR 21-24.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 24.) The ALJ then found that Plaintiff had the following RFC:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps, stairs, ladders and scaffolds and only occasionally balance, stoop, kneel, crouch and crawl.

(TR 24-31.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as a hairstylist. (TR 31.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 30, 2012, through the date of the decision. (TR 19, 31-32.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).    This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

5

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he substantial evidence of the record demonstrates that the ALJ rejected most of [Plaintiff's] severe impairments without proper evaluation;" and (2) "[t]he ALJ's residual functional capacity does not accurately portray [Plaintiff's] impairments." (Docket no. 16 at 11-22.)

#### 1. The ALJ's Step-Two Determination

Plaintiff argues that the ALJ erred by finding that her carpal tunnel syndrome, obesity, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, hypertension, depression, right shoulder mild degenerative changes, and sialadenitis were not severe impairments, and that he did so without proper evaluation of the same. (Docket no. 16 at 11-19.) A severe impairment or combination of impairments is one that significantly limits the

claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  But the step-two severity analysis is simply a threshold determination.  It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe.  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  This is so because the second step is designed simply to screen out and dispose of baseless claims.  *Anthony*, 266 F. App'x at 457.  Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at step two of the sequential evaluation process, the ALJ determined that Plaintiff suffered from the severe impairments of inflammatory bowel syndrome and diabetes mellitus. (TR 21.)  The ALJ then acknowledged that the record contains evidence that Plaintiff also suffers from carpal tunnel syndrome, obesity, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, hypertension, depression, right shoulder mild degenerative changes, and sialadenitis, and he found those medically determinable impairments to be non-severe. (TR 21.)  The ALJ then engaged in a discussion of each of Plaintiff's non-severe impairments and the evidence related thereto,

7

providing specific reasons for finding the impairments to be non-severe (TR 21-24), which discussion Plaintiff contends is improper and insufficient.

Plaintiff concedes, however, that once the ALJ determines that any one impairment is severe, it becomes legally irrelevant that other impairments are deemed non-severe, as long as the ALJ considers both the severe and non-severe impairments at the remaining steps of the sequential evaluation process. (Docket no. 16 at 12 (citing *McGlothin, supra*).) A plain reading of the ALJ's decision in this case demonstrates that the ALJ did obviously and thoroughly consider and discuss Plaintiff's carpal tunnel syndrome, obesity, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, hypertension, depression, right shoulder mild degenerative changes, and sialadenitis throughout his assessment of Plaintiff's RFC. (*See* TR 25-29.) It is therefore legally irrelevant that the ALJ found these impairments to be non-severe, with or without proper explanation. Accordingly, under *McGlothin* and *Maziarz*, Plaintiff's step-two challenge fails.

### 2.     *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff argues that the ALJ's RFC assessment does not accurately portray Plaintiff's impairments because (1) the ALJ "did not adequately explain how his severe impairment findings affect the RFC;" and (2) the ALJ "did not factor Plaintiff's mental impairments and limitations." (Docket no. 16 at 19-22.) The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id*. He must support the RFC by including a narrative discussion describing how the evidence supports

his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Plaintiff prefaces her specific arguments regarding the ALJ's RFC assessment with several cursory, conclusory arguments. (Docket no. 16 at 19-20.) For example, Plaintiff argues that the ALJ's decision "is not within the substantial evidence standard;" [t]he ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits," which he did not do in this case; and "[t]here is not a scintilla of evidence to support the ALJ's RFC assessment that [Plaintiff] would be capable of work at the light exertional level." (*Id*.) These arguments, however, are completely undeveloped and will therefore not be addressed by this Court, as "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted). Plaintiff also states that she "believes a fair and overall look at the evidence in this case demonstrates that the evidence was not weighed fairly and there is cause for remand." (Docket no. 16 at 19-20.) To the extent that Plaintiff intends this statement to be an argument for

9

remand, she essentially invites the Court to reweigh the evidence and substitute its own judgment for that of the ALJ, which is not the Court's role. *Brainard, supra*, 889 F.2d at 681. Accordingly, this argument also fails.

Plaintiff then argues that the ALJ's RFC assessment does not meet the narrative discussion requirement of SSR 96-8p. (Docket no. 16 at 20.) Specifically, Plaintiff argues that the ALJ does not adequately explain how Plaintiff's severe impairments of inflammatory bowel syndrome and diabetes mellitus affect her RFC. (*Id*.) To the contrary, the ALJ, after summarizing Plaintiff's hearing testimony and the medical evidence, discussed Plaintiff's severe impairments as follows:

> In terms of Claimant's alleged impairments, I find Claimant to be partially credible. While Claimant testified to experiencing episodes of diarrhea, I do not find they occur as frequently as five times a day 3-4 times a week. While Claimant has a history of irritable bowel syndrome, in April 2015, she reported only recently experiencing nausea and intermittent diarrhea. She reported an increase of five bowel movements a day versus a previous baseline of three bowel movements a day. Despite this increase in bowel movements, she has not experienced a significant decrease in her weight and has not sought treatment from a specialist or the emergency room. One would expect that with Claimant's past medical history she would seek treatment from a specialist if her symptoms were as severe as she testified. Further, Claimant reported she began experiencing these symptoms after resuming metformin for her diabetes mellitus, which suggest[s] that her symptoms may be due to medication and not related to her history of irritable bowel syndrome. She was not found to have tenderness of her abdomen or other symptoms of irritable bowel syndrome. **However, Claimant has a significant history of irritable bowel syndrome and due to possible bowel incontinence with strenuous activity she is limited to light work with only occasional climbing of ladders and scaffolds and occasional crawling and crouching.**
>
> Regarding her diagnosis of diabetes mellitus, labs note her last A1c level to be 7.2. Her last A1c was taken after a period of time when Claimant had not been taking Metformin for her diabetes mellitus and she was not keeping a log of her blood sugars. Despite not having complied with her diabetes mellitus regimen, Claimant did not report increased symptoms due to uncontrolled blood sugar. She was not hospitalized for diabetic ketoacidosis or for symptoms related to uncontrolled blood sugar. Again, **due to possible symptoms of diabetes mellitus including dizziness and fatigue, Claimant is limited to light work**

> **with occasional climbing of ramps, stairs, ladders and scaffolds, along with occasional balancing, stooping, kneeling, crouching and crawling. Due to the lack of symptoms related to the impairments, a more restricted residual functional capacity would not be warranted.**

(TR 28 (emphasis added).) The ALJ also discussed Plaintiff's chronic pain, neck pain, carpal tunnel syndrome, degenerative disc disease, and obesity, and he limited Plaintiff to lifting no more than 10 pounds frequently and 20 pounds occasionally to limit the exacerbation of her symptoms related to those impairments. (TR 28-29.) He then discussed the credibility of Plaintiff's complaints relative to her activities of daily living, medication, and other forms of treatment. (TR 29.) Finally, the ALJ discussed and assessed the medical opinion evidence submitted by Drs. Elizabeth Edmond, M.D., Linda Dillon, M.D., and Sonia Ramirez-Jacobs, M.D. (TR 29-31.)

Plaintiff acknowledges that the ALJ made the "specific statements [highlighted in bold above], directly related to his severe impairment findings and how they reflect the RFC." (Docket no. 16 at 20.) But she argues that "[t]he ALJ should not be able to deny Plaintiff benefits with such ease, writing a decision that ignores medically documented severe impairments and includes an RFC that is oversimplified without adequate explanation." (*Id*. at 21.) She adds that "[i]n any event, the ALJ's lack of explanation as to how his two severe impairmen[t]s findings affect the RFC constitutes reversible error." (*Id*.)

Plaintiff's position in this regard lacks merit. Plaintiff concedes that the ALJ directly addressed and provided specific statements regarding how her severe impairments of IBS and diabetes affect her RFC. And Plaintiff's conclusory assertion that the ALJ's discussion regarding those impairments lacks explanation is directly contradicted by the two paragraphs reproduced above. Notably, Plaintiff does not provide any insight into what additional

explanation she seeks or believes the ALJ should have rendered regarding those two impairments. Additionally, as discussed above, and contrary to Plaintiff's assertions, the ALJ did properly consider what he deemed to be Plaintiff's non-severe impairments in assessing Plaintiff's RFC. Having conducted a careful review of the ALJ's decision, the undersigned finds that the ALJ explicitly considered Plaintiff's severe and non-severe impairments in conjunction with the record evidence and Plaintiff's subjective statements in assessing Plaintiff's RFC. In doing so, the ALJ set forth a discussion that adequately complies with the requirements of SSR 96-8p. Plaintiff's Motion should therefore be denied in this regard.

Plaintiff also argues that the ALJ neglected to consider her depression in assessing her RFC. (Docket no. 16 at 21.) As discussed above with regard to the ALJ's step-two determination, however, the ALJ did indeed discuss and consider Plaintiff's depression in formulating Plaintiff's RFC. For example, the ALJ considered Plaintiff's statement that she had been dealing with depression for the past 10 years and that it had worsened over the previous 2-3 years. (TR 25.) The ALJ noted that Plaintiff presented to Dr. Dillon on June 6, 2014 as tearful and complaining of depression but that she declined medication for it. (TR 26 (citing TR 477-78).) The ALJ also discussed a July 2014 psychosocial assessment that Plaintiff underwent due to her depression, at which she reported a depressed mood, feelings of worthlessness and suicidal thoughts. (TR 26 (citing TR 473-74).) The ALJ pointed out that Plaintiff started taking Prozac around that time, and by August of 2014, Plaintiff reported that while she was still depressed, her mood was better, she was crying less often, and she was no longer experiencing suicidal thoughts. (TR 27 (citing TR 466, 472).) The ALJ further noted that in March of 2015, Plaintiff reported that her depression was okay, and she was compliant with Prozac. (TR 27 (citing 455).) The ALJ therefore did properly consider Plaintiff's depression in assessing her RFC.

Plaintiff further argues that because the RFC assessment does not include any non-exertional limitations, it does not properly account for her depression or the mild limitation in social functioning that the ALJ attributed to Plaintiff when he evaluated her depression under Listing 12.04. (Docket no. 16 at 21-22.) Plaintiff further argues that if the ALJ believed that Plaintiff's mild limitation in social functioning did not translate into a non-exertional limitation, he clearly had a duty to provide an explanation for that belief in his decision, which he did not do. (*Id*. at 22 (citing *Reinhardt v. Colvin*, No. 3:14-cv-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015))).) The precedent on which Plaintiff relies for this assertion, however, is not binding.

As Defendant points out, courts in this district have found that "mild limitations do not require incorporation into an RFC assessment." (See docket no. 18 at 26-27 (citing *Burrell v. Comm'r of Soc. Sec.*, No. 14-14529, 2016 WL 1165994, at *10 (E.D. Mich. Feb. 29, 2016), *report and recommendation adopted*, No. 14-14529, 2016 WL 1161548 (E.D. Mich. Mar. 23, 2016) and *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *14 (E.D. Mich. Feb. 10, 2012), *report and recommendation adopted*, No. 11-CV-10896, 2012 WL 680392 (E.D. Mich. Mar. 1, 2012). Courts in this district have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairment in the RFC analysis. *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *5-7 (E.D. Mich. Feb. 27, 2015); *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015).

But such is not the case here. As discussed above, the ALJ did clearly consider Plaintiff's depression in assessing Plaintiff's RFC. Also, despite finding that Plaintiff suffers

13

from major or severe depression, neither Plaintiff's treating physician nor the consultative examiner assessed functional limitations to Plaintiff as a result. (*See* TR 387-99.) Moreover, Plaintiff does not indicate what additional functional limitations the ALJ should have assessed to accommodate for her depression. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Plaintiff has not met her burden here. In light of the above, the undersigned finds that the ALJ's failure to explicitly explain why Plaintiff's mild limitation in social functioning related to her depression did not translate into a non-exertional limitation in Plaintiff's RFC is not reversible error warranting remand. For these reasons, the ALJ's assessment of Plaintiff's RFC should not be disturbed.

## VI.  CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 16) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  July 24, 2017                           s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  July 24, 2017                           s/ Lisa C. Bartlett
                                                Case Manager